J-S33024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE MATTER OF: J.A.W.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.S., MOTHER | : | No. 66 MDA 2017 |

Appeal from the Order Entered December 14, 2016
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s):  95-AD-2016,
CP-22-DP-0000227-2014

BEFORE:   BENDER, P.J.E., OTT, and STRASSBURGER[*], JJ.

MEMORANDUM BY OTT, J.:                           **FILED JULY 03, 2017**

J.S. ("Mother") appeals from the order and decree entered December 14, 2016, in the Court of Common Pleas of Dauphin County, which changed the permanency goal of her minor daughter, J.A.W.S. ("Child"), born in December 2014, to adoption, and involuntarily terminated Mother's parental rights.[1]  Additionally, Mother's counsel has filed a motion to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court entered separate orders and decrees on January 5, 2017, changing Child's permanency goal to adoption and terminating parental rights with respect to her putative father, J.W., and with respect to any unknown father that Child may have.  Neither J.W., nor any unknown father, has appealed the change of Child's permanency goal or the termination of his parental rights.

*Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). Upon review, we grant counsel's motion to withdraw and affirm the order and decree.

The orphans' court has aptly summarized the factual and procedural history of this case, and we adopt its recitation. *See* Orphans' Court Opinion, 2/9/2017, at 1-9. Importantly, Dauphin County Social Services for Children and Youth ("the Agency") filed a petition to change Child's permanency goal to adoption and to involuntarily terminate Mother's parental rights on October 3, 2016. The orphans' court held a goal change and termination hearing on December 13, 2016. Following the hearing, on December 14, 2016, the court entered an order and decree changing Child's permanency goal to adoption as to Mother and terminating Mother's parental rights. Mother timely filed a notice of appeal on January 10, 2017, which included a statement of counsel's intent to file a motion to withdraw and *Anders* brief pursuant to Pa.R.A.P. 1925(c)(4).[2] Mother's counsel filed a motion to withdraw and *Anders* brief on February 20, 2017.

_____

[2] Counsel indicated in the notice of appeal that Mother intended to appeal both the change of Child's permanency goal and the termination of her parental rights. Counsel also included both the dependency and orphans' court docket numbers. However, counsel filed the notice of appeal in the orphans' court only, and failed to file it with the clerk of courts. As a result, this Court received only the orphans' court record, and did not receive the dependency record. On June 1, 2016, this Court entered a *per curiam* order directing the orphans' court to certify the dependency record and transmit it to this Court. We received the dependency record on June 9, 2017.

Before reaching the merits of Mother's appeal, we first must address counsel's motion to withdraw. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)). "In *In re V.E.*, 417 Pa.Super. 68, 611 A.2d 1267 (1992), this Court extended the *Anders* principles to appeals involving the termination of parental rights." *In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014). To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an *Anders* brief must comply with the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, counsel filed a motion to withdraw, certifying that he has reviewed the case and determined that Mother's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Mother, and counsel's assessment of why those issues are meritless, with citations to relevant legal authority.[3] Counsel attached to his brief a copy of his letter to Mother, advising her that she may obtain new counsel or raise additional issues *pro se*.[4] Accordingly, counsel has complied with the requirements of

---

[3] Counsel's brief includes a certificate of service, indicating that counsel provided a copy to Mother.

[4] In his letter, counsel informed Mother that she should send any responsive filings to the Superior Court Prothonotary's Office in Harrisburg. However, counsel provided Mother with an incorrect mailing address. The Prothonotary's Office contacted Mother's counsel, and informed him of this mistake. On February 22, 2017, counsel provided this Court with a copy of an additional letter to Mother, informing her of the correct mailing address. Mother did not file a response to counsel's *Anders* brief.

***Anders*** and ***Santiago***. We, therefore, may proceed to review the issues outlined in the ***Anders*** brief. In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's ***Anders*** brief raises the following issues for our review.

1. Whether the [orphans'] court abused its discretion when it changed the goal from reunification to adoption?

2. Whether the [orphans'] court abused its discretion when it involuntarily terminated appellant Mother's parental rights?

***Anders*** brief at 9 (unnecessary capitalization, underlining, suggested answers, and footnotes omitted).

We first consider whether the orphans' court abused its discretion by changing Child's permanency goal to adoption. Our standard of review is well-settled.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010).

Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the

- 5 -

appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

Instantly, the orphans' court issued a thorough opinion discussing its decision to involuntarily terminate Mother's parental rights. While the court did not discuss its decision to change Child's permanency goal to adoption, we find that its discussion of the evidence supporting termination also supports its decision to change Child's goal. In its opinion, the court found that Mother failed to remedy the conditions which resulted in Child's removal from her care, as she failed to comply with drug treatment, relapsed into drug use, and was incarcerated repeatedly. Orphans' Court Opinion, 2/9/2017, at 12-13. Further, the court found that Mother has been absent for nearly Child's entire life, and that there is no evidence that Mother and Child share a bond. *Id.* at 14. Instead, Child is bonded with her foster mother, who is the only parental figure Child has known. *Id.* at 15.

Our review of the record supports the findings of the orphans' court. During the goal change and termination hearing, the Agency presented the testimony of Mother's parole agent, Christina Zborovian. Ms. Zborovian testified that Mother was convicted of possession of marijuana, possession

with intent to deliver, driving without a license, and driving under the influence in September 2014. N.T., 12/13/2016, at 63-64. As a result of these convictions, Mother was sentenced to eighteen months of county probation. *Id.* at 64. However, Mother's probation was revoked in December 2014, and she was resentenced to fourteen to twenty-eight months of incarceration. *Id.* Mother was released in January 2016. *Id.* at 63. Ms. Zborovian testified that Mother violated the conditions of her parole almost immediately after her release, by testing positive for marijuana, PCP, and cocaine on February 12, 2016. *Id.* at 64-65. Mother submitted another positive drug test for marijuana and PCP on February 22, 2016. *Id.* at 66. On February 23, 2016, Ms. Zborovian transported Mother to an inpatient drug and alcohol treatment center. *Id.* Mother absconded on March 7, 2016, and a warrant was issued for her arrest. *Id.* Mother was apprehended and incarcerated from March 18, 2016, until May 17, 2016, at which point she admitted to additional use of marijuana and PCP. *Id.* On August 1, 2016, Ms. Zborovian received a letter from Mother's outpatient drug and alcohol treatment provider, indicating that they were discharging her unsuccessfully due to her lack of attendance. *Id.* Mother was incarcerated for a third time on August 11, 2016, after she once again tested positive for marijuana and PCP. *Id.* at 67. Mother remained incarcerated at the time of the goal change and termination hearing. *Id.* at 68.

Concerning Child's relationship with Mother, the Agency presented the testimony of caseworker, Tricia Deatrick. Ms. Deatrick testified that Child

has spent her entire life in the care of her foster mother, G.H., and never resided with Mother. *Id.* at 98. By the time of the goal change and termination hearing, Child had been in G.H.'s care for approximately two years. *Id.* G.H. reported to Ms. Deatrick that Mother often visited with Child during the times that she was not incarcerated, and that Child "did form a bond with her mother." *Id.* at 99. However, Ms. Deatrick explained that Mother's visits lasted only a short time, due to her frequent incarcerations. *Id.* Ms. Deatrick opined that Child's best interest would be served by changing Child's permanency goal to adoption. *Id.* at 112. Ms. Deatrick reported that Child has an "extensive bond" with G.H. *Id.* Child also is bonded with her sibling J., who has already been adopted by G.H. *Id.* at 113.

Thus, the record amply supports the finding of the orphans' court that Child's permanency goal should be changed to adoption. Mother has never cared for Child. Child is now over two years old, and has spent the entirety of that time residing with her foster mother, G.H. Child is bonded to G.H., and G.H. already has adopted Child's sibling, J. Meanwhile, Mother has made little, if any, progress toward being able to parent Child. Mother failed to comply with drug treatment and relapsed into drug use, resulting in her current incarceration. It was well within the court's discretion to conclude that Child's life should not be put on hold any longer, and that Child's best interest would be served by being adopted by G.H. As this Court has explained in the context of involuntary termination of parental rights

proceedings, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

We next consider whether the orphans' court abused its discretion by terminating Mother's parental rights to Child involuntarily. We do so mindful of the following.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The orphans' court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b), which provides as follows.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

***

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months,

the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*\*\*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).

As discussed above, the Honorable John F. Cherry authored a thorough and well-reasoned opinion in support of his decision to terminate Mother's parental rights.  **See** Orphans' Court Opinion, 2/9/2017, at 9-15 (finding that Child was removed from Mother's care on December 3, 2014, that

Mother failed for the next two years to remedy the conditions which led to Child's removal, and that terminating Mother's parental rights will best serve Child's needs and welfare). In his opinion, Judge Cherry emphasized that he did not terminate Mother's parental rights based solely on the fact of her incarceration, but that he "found as dispositive Mother's failure to place her parental duty to her child above her continued drug use and resulting re-incarceration." *Id.* at 13. The record overwhelmingly supports this determination.[5] Because we agree with the sound reasoning of the orphans' court, we adopt the court's opinion as dispositive of the Mother's challenge to the termination of her parental rights. [6] In the event of future

_____

[5] Our Supreme Court has held that incarceration is a permissible factor for courts to consider when terminating parental rights. *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012). The Court stated that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing 'essential parental care, control or subsistence' and the length of the remaining confinement can be considered as highly relevant to whether 'the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent,' sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2)." *Id.*

[6] With regard to Section 2511(b), the orphans' court indicated in its opinion that "Mother presented no evidence upon which we may find that a bond exists which, if broken, will cause detriment to [Child]." Orphans' Court Opinion, 2/9/2017, at 14. It is important to note that it was not Mother's burden to prove that a bond existed between her and Child. Rather, it was the burden of the Agency to prove that termination will serve Child's needs and welfare by clear and convincing evidence. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Nonetheless, because the evidence confirms overwhelmingly that termination will serve Child's needs and welfare, we need not remand this matter for a new Section 2511(b) analysis.

proceedings, the parties are directed to attach a copy of the court's February 9, 2017 opinion to this decision. The opinion should be redacted to exclude Child's birthday, the names of Child and her parents, and the name of Child's foster mother, who is also her maternal grandmother.

Accordingly, our independent review of Mother's claims demonstrates that they do not entitle her to relief. Moreover, our review of the record does not reveal any non-frivolous issues overlooked by counsel. **_See Flowers_**, 113 A.3d at 1250. Therefore, we grant counsel's motion to withdraw, and we affirm the December 14, 2016 order and decree.

Motion to withdraw granted. Order and Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/3/2017

IN THE INTEREST OF         : IN THE COURT OF COMMON PLEAS
                                     : DAUPHIN COUNTY, PENNSYLVANIA

        J.W.-S.                    :

        A MINOR             : NO. 227 DP 2014/ 95 AD 2016
                                       :


## TRIAL COURT OPINION


This appeal follows the Decree of Involuntary Termination of Parental Rights entered

December 13, 2016 of J████ S██████ ("Mother") to J████ A██W████ S██████ ("J.W.-S."),

born December █ 2014. At the conclusion of the hearing on the Petition for Goal Change to

Adoption and Involuntary Termination of Parental Rights, we set forth our findings of fact and

conclusions of law. (Transcript of Proceedings, December 13, 2016)("N.T." pp. 117-123). We

amplify those findings and conclusions with this Opinion.



## FACTUAL AND PROCEDURAL BACKGROUND

The Dauphin County Social Services for Children and Youth ("Agency") caseworker, Kelly

Colbey, first became involved regarding a child born approximately one year before J.W.-S. .

The Agency received a referral on November 14, 2013 which indicated that Mother gave birth to

a child who tested positive for phencyclidine ("PCP"). (N.T. p.8; p. 72).[1] Although services

remained available to Mother as to that child, Mother ceased communicating with the Agency

caseworker in approximately April or May of 2014 and failed to submit required urine screens.

(N.T. p. 74).

---

[1] Mother voluntarily relinquished parental rights as to that child. (N.T. p. 72).

1

In October 2014, Ms. Colbey received information that Mother was pregnant and incarcerated in Dauphin County Prison following a positive urine test and her refusal of admission to a rehabilitation facility. (N.T. p. 75). Mother's incarceration arose out of her September 24, 2014 conviction on charges of Possession with Intent to Deliver, Driving Under the Influence Possession of Marijuana and Driving Without a License. (N.T. pp. 63-64). Mother received a sentence of 18 months of county probation. (N.T. p. 64). On December 3, 2014, Mother gave birth to J.W.-S.. (N.T. p. 77). Because Father, J██████ W██████ was incarcerated, the Agency sought placement resources for J.W.-S.. (N.T. p. 78). [2]

On December 11, 2014, the Dependency Court Hearing Master conducted a shelter care hearing. Mother's mother, G██ H████████ presented as a placement resource. (*Id.*)

Mother's probation was revoked on December 16, 2014. The Court sentenced Mother to 14 to 28 months incarceration in a state correctional institution. (N.T. p. 79).

On December 17, 2014, the Dependency Court adjudicated J.W.-S. as dependent and placed her in the kinship care of Ms. H████████. J.W.-S. has remained in Ms. H████████'s home since that date. (*Id.*)

The Family Service Plan and Mother's achievement of those objectives were as follows:

1. Cooperate and comply with service objectives.

    Mother cooperated by maintaining contact with Agency caseworker Kelly Colbey by writing letters from prison during Ms. Colbey's handling of the case through September 2015. Ms. Colbey apprised Mother of the need to provide certificates of completion for programs completed during incarceration. (N.T. 80). At the

---

[2] Termination of Father's rights are not at issue in this appeal.

2

conclusion of Ms. Colbey's handling of the case, Mother had not provided certificates of completion.

2. Obtain a drug and alcohol evaluation.

Mother reported to Ms. Colbey that she received a drug and alcohol evaluation while incarcerated and underwent an intensive outpatient. However, Mother never documented completion of those objectives. (N.T. pp. 81-82; N.T. p. 91; p. 94).

3. Provide random weekly urine screenings.

Mother did not provide random weekly urine screens, although it is presumed she remained drug free during incarceration. (N.T. p 82).

4. Ensure that J.W.-S. receives all necessary and recommended medical care, including immunizations, dental, mental health and/or educational services.

Mother was unable to complete this objective because of her incarceration. (N.T. p. 3).

5. Participate and successfully complete an Agency-approved parenting education program.

Mother stated in letters to MS. Colbey that she was on the waiting list for a parenting class. Mother never provided documentation of completion. (N.T. p. 83; 94).

6. Refrain from all criminal activity and resolve all pending criminal matters.

Mother was incarcerated during the entire period of Ms. Colbey's handling of the case. (*Id.*).

7. Maintain contact with Agency caseworker at a minimum of once a week.

Mother told Ms. Colbey that she attempted to call her but did not have enough money on her telephone card. Mother maintained good contact through letters. (N.T.

3

p. 84). Ms. Colbey had no recollection of Mother ever inquiring about J.W.-S. . (N.T. p. 86). Mother stated that she attempted to have J.W.-S. and Ms. ███████'s names placed on a prison visitation list. (N.T. pp. 94-95).

8. Attend court hearings, Agency meetings and treatment plan meetings.

Mother did not attend the shelter care hearing, adjudication and disposition hearing or permanency review hearing. (N.T. pp. 84-85). While incarcerated, Mother wrote that she wished to attend a hearing. However, Ms. Colbey did not receive the correspondence in sufficient time to arrange Mother's attendance. (N.T. p. 84).

9. Sign all release of information forms requested by the Agency to ensure compliance in meeting identified service objectives.

Mother complied with this objective. (N.T. pp. 85-86).

10. Notify the Agency within 24 hours of a new residence or contact information.

Mother advised Ms. Colbey of her transfers to SCI-Muncy then to SCI-Cambridge Springs.

(*See also*, Exhibit 3, Child Permanency Plan; Exhibit 4 Family Service Plan, January 7, 2015 and July 2015).

From the time of J.W.-S.'s placement to the conclusion of Ms. Colbey's handling of the case in September, 2015, Mother's incarceration constituted the most significant barrier to her reunification with J.W.-S. . (N.T. p. 87; p. 90).

Agency caseworker Tricia Deatrick assumed handling of the case in September 2015. Upon Mother's release from incarceration in January 2016, the Agency updated the objectives of the Family Service Plan. The objectives established and the success achieved by Mother were:

1. Attend all court hearings, Agency meetings, and treatment plan meetings.

4

Mother did not attend any court hearings, request to participate in any court hearings or communicate with Ms. Deatrick in any way with the exception of leaving a voice mail on May 17, 2016. (N.T. p. 108).

2. Sign all release of information forms requested to ensure compliance with the identified service objectives.

The Agency did not require signature of any releases during Ms. Deatrick's handling of the case. (N.T. 109).

3. Notify the Agency within 24 hours of a new residence or contact information.

Mother failed to notify the Agency of any of her address changes at the time of her release from incarceration, entry or departure from an inpatient drug treatment program, or subsequent release and re-incarceration. (*Id.*).

4. Reimburse Dauphin County for support of J.W.-S. in an amount determined by the Dauphin County Domestic Relations Office.

Mother has made no reimbursement. (*Id.*)

5. Maintain contact with the caseworker at least once a week.

Ms. Deatrick received only one phone contact. (*Id.*)

6. Actively participate in all scheduled visits with J.W.-S. .

When not incarcerated, Mother participated in supervised visits with J.W.-S. .

7. Attend and participate in J.W.-S.'s medical, dental and educational appointments and meetings.

Because she was incarcerated, Mother has not attended any of J.W.-S.'s appointments. (N.T. p. 110).

5

8. Follow through with all recommendations regarding J.W.-S.'s medical or developmental needs.

> Because she was incarcerated, Mother did not attend any of J.W.-S.'s
>
> appointments. (N.T. p. 110).

9. Participate in and successfully complete family reunification services.

> Because of Mother's incarceration, the Agency has been unable to make referrals
>
> for Mother's participation in reunification services. (N.T. p. 111).

10. Participate in and successfully complete an Agency-approved parenting education program.

> Mother reported that she participated in a parenting education program, but did not
>
> provide supporting documentation. (N.T. 111).

11. Obtain a drug and alcohol evaluation and follow through with all recommendations.

> Mother did not provide supporting documentation of her participation in programs
>
> during incarceration. Upon release from incarceration, Mother resumed using PCP
>
> and tetrahydrocannabinol (THC). Mother absconded from an intensive inpatient
>
> treatment program and was discharged as unsuccessful from an outpatient program.
>
> (N.T. p. 111).

12. Upon release from incarceration, provide urine screens three times per week, on Monday, Wednesday and Friday.

> Mother provide no urine screens to the Agency while on release. (N.T. p. 112).

13. Refrain from all criminal activity and resolve all pending criminal matters.

> Mother violated the terms of probation by repeated drug use which resulted in re-
>
> incarceration. (*Id.*).

6

In addition to the testimony of Ms. Colbey and Ms. Deatrick's, the Agency presented the testimony of Mother's Parole Agent, Christina Zborovian. Ms. Zborovian testified regarding Mother's continued drug use and involvement with criminal matters following her release from incarceration in January 2016. (N.T. pp. 62-71). The Mother's parole conditions required that she refrain from illicit drug use, submit to urinalysis, obtain drug and alcohol treatment, refrain from associating with any disreputable persons, known gang members or person on probation or parole and refrain from contact with her co-defendant or victims. (N.T. p. 64). Mother's supervision required a minimum of 2 contacts with Ms. Zborovian per month and one urinalysis per month. (N.T. p. 65). Mother met with Ms. Zborovian on January 13, 2016, signed an acknowledgement of the probationary conditions and provided a negative urine test. (*Id.*).

Mother did not personally notify the Agency of her release from incarceration in January 2016. (N.T. p. 98). Ms. Deatrick learned of Mother's release from Ms. H█████ and that Mother was staying with her grandmother. (N.T. p. 101). Ms. Deatrick wrote to advise Mother of her assignment as caseworker, provide her an updated copy of the permanency plan and remind Mother of the need to address the family service plan. (N.T. p. 101; Exhibit 97). Mother did not contact the Agency. (N.T. p. 102).

On February 12, 2016, Mother submitted a urine test positive for marijuana, PCP and cocaine. Mother admitted to use of marijuana and PCP on the prior weekend. (N.T. pp. 65-66). On February 22, 2016, Mother again tested positive urine for marijuana and PCP and admitted to prior use. (N.T. p. 66). Ms. Zborovian deemed inpatient treatment necessary for Mother. (*Id.*).

On February 23, 2016, Mother was admitted to Adapt, an inpatient drug and alcohol treatment center in Reading, Pennsylvania. However, On March 7, 2016, Mother absconded from Adapt. Mother was arrested on a warrant on March 18, 2016 and incarcerated in the Lackawana County

7

Jail Parole Violator Center. On the date of her arrest, Mother admitted to more drug use. (N.T. p. 66). Mother was incarcerated from March 2016 through May 2016. (N.T. p. 105).

On May 17, 2016, Mother called Ms. Deatrick and left a voicemail which requested a return call. (N.T. p. 103). Ms. Deatrick returned the call but did not hear back from Mother. (N.T. 103).

On June 1, 2016, Mother submitted a urine test positive for Oxycodone and opiates. Mother stated that she was prescribed those drugs during a hospitalization, but failed to provide supporting records. (N.T. pp. 66-67). On July 6, 2016, Mother submitted a urine test positive for opiates and did provide evidence of hospitalization. (N.T. p. 67).

Ms. Deatrick wrote to Mother on July 17, 2016. (N.T. pp. 105-106; Exhibit 12). Mother did not respond. (N.T. p. 107).

On August 1, 2016, Ms. Zborovian received correspondence from Gaudenzia, an outpatient drug treatment provider, which advised of Mother's discharge as unsuccessful for failure to attend treatment since June 20, 2016.(N.T. p. 67).

On August 11, 2016, Mother submitted a urine sample which tested positive for PCP and marijuana. Mother was re-incarcerated to SCI Muncy on the same date. (*Id.*).

Ms. Zborovian testified that Mother demonstrated very poor willingness to participate in substance abuse treatment. (N.T. p. 69).

Ms. Deatrick testified that termination of Mother's parental rights and a goal change to adoption best serves J.W.-S.'s interests. (N.T. p. 112). Ms. Deatrick has observed that a strong bond between Ms. H█████ and J.W.-S. . Ms. H█████ provides for all of J.W.-S.'s needs. J.W.-S. looks to her for comfort and affection. (N.T. pp. 112-113). Ms. H█████ is an adoptive resource for J.W.-S. , having also adopted J.W.-S.'s sibling. (N.T. p. 113). Ms. H█████ is

willing to allow J.W.-S.'s parents in her life. However, she recognizes that Mother cannot safely care for J.W.-S.. (N.T. p. 113).

The Agency filed a Petition for Goal Change to Adoption and Involuntary Termination of Parental Rights on October 3, 2016. At the time of the December 13, 2016 hearing, J.W.-S. had been in the care and custody of the Agency for more than 2 years. (N.T. p. 98).

## DISCUSSION

A. The Agency met its burden of proving that statutory grounds exist for termination of Mother's parental rights.

The standard of review governing the trial court's termination of parental rights is well settled. Namely,

> When reviewing an appeal from a decree terminating parental rights, [the Superior Court] is limited to determining whether the decision of the trial court is supported by competent evidence. *See In re K.C.W.*, 456 Pa. Super.1, 689 A.2d 294, 298 (1997). Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. *Id.* Where a trial court has granted a petition to involuntarily terminate parental rights, [the Superior Court] must accord the hearing judge's decision the same weight we would give to a jury verdict. *See In re Child M.*, 452 Pa. Super. 230, 681 A.2d 793, 800 (1996). We must employ a broad comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *See In re Matsock*, 416 Pa.Super. 520, 611 A.2d 737, 742 (1992). *In re C. S.* 761 A.2d 1197, 1199 (Pa. Super. 2000).

The Agency, as the party seeking termination, bears the burden of establishing by clear and convincing evidence that grounds exist for termination of parental rights. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa. Super. 2002). The standard of clear and convincing evidence means "testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Matter of*

9

*Sylvester*, 555 A.2d 1202, 1203-1204 (Pa. 1989). We found that the Agency met its burden of proof and that termination of Mother's parental rights was proper.

The record establishes by clear and convincing evidence that for an unreasonable time, Mother failed to remedy the conditions which led to placement although services and opportunities to do so were made readily available to her. The Agency sought termination of Mother's parental rights based upon the Adoption Act, 23 Pa.C.S. §2511(a)( 1 ), (2), (5) and (8) , which provide:

> (1) The parent by conduct continuing for a period of at least six months  immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

> \*\*\*

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would serve the needs and welfare of the child.

> \*\*\*

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions

10

which led to the removal or placement of the child continue to exist
and termination would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(1), (2), (5) and (8).

In considering whether the party seeking termination has satisfied these provisions, the

Appellate Court keeps in mind that a parent has an affirmative duty to work towards the return of

his or her children. *In re Adoption of J.J.,* 511 Pa. 590, 602, 515 A.2d 883, 889 (Pa. Super.

1986). At a minimum, that "affirmative duty requires that the parent show a willingness to

cooperate with CYS to obtain the rehabilitative services necessary to enable the parent to meet

the duties and obligations inherent in parenthood." *Id.* In a termination proceeding, the trial

court must consider all the circumstances in determining whether a parent has fulfilled his

obligations; the court must further measure the parent's performance in light of what would be

expected of any individual under similar circumstances. *Matter of M.L.W.,* 307 Pa. 29, 33-34,

452 A.2d 1021, 1023-24 (1982) *(citations omitted).* Further, the Appellate Court need only agree

with the trial court's decision as to any one subsection in order to affirm the termination of

parental rights. *In re J.E.* 745 A.2d 1250 (Pa. Super. 2000). See also, *In re J.I.R.,* 808 A.2d 934,

940 n.6 (Pa. Super. 2002). The Superior Court has explained:

> The statute permitting the termination of parental rights
> outlines certain irreducible minimum requirements of care
> that parents must provide for their children, and a parent who
> cannot or will not meet the requirements within a reasonable
> time following intervention by the state may properly be
> considered unfit and have her parental rights terminated.
> There is no simple or easy definition of parental duties.
> Parental duty is best understood in relation to the needs of a
> child. A child needs love, protection, guidance and support.
> These needs, physical and emotional, cannot be met by a
> merely passive interest in the development of the child.
> Thus, this court has held that the parental obligation is a
> positive duty which requires affirmative performance.
>
> ***

11

> A parent must utilize all available resources to preserve the parental
> relationship, and must exercise reasonable firmness in resisting obstacles
> placed in the path of maintaining the parent-child relationship. Parental rights
> are not preserved by waiting for a more suitable time to perform one's parental
> responsibilities while others provide the child with his or her physical and
> emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008).

Clear and convincing evidence as cited in detail, *supra*, establishes grounds for termination under 23 Pa.C.S.A. §(a)(8). Applying the provisions Section 2511 (a)(8), we find that J.W.-S. was removed from Mother's care on December 3, 2014 and has remained in foster care since that time. More than 12 months have elapsed since the date of J.W.-S.'s placement in foster care.

We recognize that Mother wrote letters to the Agency to report that she was participating or planning to participate in prison programs. In considering the relevance of a parent's minimal progress in relation to a child's need for permanency, our Appellate Court has stated,

> We recognize that the application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parental responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law which contemplates only a short period of time, to wit eighteen months, in which to *complete* the process of either reunification or adoption for a child who has been placed in foster care.

*In re I.J.*, 972 A.2d 5, 13 (2009) (*internal citations omitted*).

Although we based our termination decision upon 23 Pa.C.S.A. §§ (a)(8), we also found clear and convincing evidence to establish grounds for termination under 23 Pa.C.S.A. §§ (a)(1),(2) and(5). The record overwhelmingly establishes that the conditions which led to removal continue to exist. Mother repeatedly relapses to drug use upon release from incarceration and has failed to comply with drug treatment made available to her.

12

We do not reach our conclusion to terminate parental rights solely on the basis of Mother's incarceration. We recognize that "[a]lthough incarceration will certainly impact a parent's capability of performing parental duties, and *may* render a parent incapable of performing parental duties under subsection (a)(2), incarceration alone is not sufficient to support termination under any subsection." *In re I.G.*, 939 A.2d 950 (2007). Rather, "imprisonment is but one factor the trial court must consider in analyzing a parent's performance. While incarcerated, a parent is expected to utilize whatever resources are available to him while in prison in order to foster a continuing close relationship with his children." *Adoption of Baby Boy A.*, 517 A.2d 1244, 1246 (Pa. 1986).

Here, Mother reported that she participated in parenting and drug and alcohol classes while incarcerated, but failed to provide supporting documentation of completion of those programs. In addition, although Mother wrote to the Agency, Ms. Colbey has no recollection of Mother inquiring about the well-being of her child.

Accordingly, we did not deem the fact of Mother's imprisonment itself as the basis of our decision to terminate Mother's parental rights. Rather, we found as dispositive Mother's failure to place her parental duty to her child above her continued drug use and resulting re-incarceration. "Where the parent does not exercise reasonable firmness in declining to yield to obstacles, [her] parental rights may be forfeited." *In re A.L.D.*, 797 A.2d 326 (Pa. Super. 2002).

We also cannot overlook the fact that, upon her release from incarceration, Mother made no effort to contact the Agency.

B. Best Interests Analysis

Pursuant to Section 2511(b), a court must give 'primary consideration to the [developmental, physical and emotional] needs and welfare of the child." *In re J. E.*, 745 A.2d 1250, 1254-55 (Pa. Super. 2000) *(citations omitted.)* The statute provides,

> Other considerations. - The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6), or (8), the court shall not consider any efforts by the parent to remedy the condition described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

In addition, the Superior Court has stated that while "Section 2511(b) does not explicitly require a bonding analysis, [case law provides that] analysis of the emotional bond, if any, between a parent and a child is a factor to be considered in determining the developmental, physical and emotional needs and welfare of the child under §2511(b)." *In the Matter of K.K.R.-S., K.M.R., K.A.R.*, 958 A.2d 529, 533 (Pa. Super. 2008). The Superior Court has explained,

> Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent child bond, paying close attention to the effect of permanently severing the bond.

*In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006).

Mother presented no evidence upon which we may find that a bond exists which, if broken, will cause detriment to J.W.-S. . With the exception of occasional supervised visits, Mother has been absent for all of J.W.-S.'s life.

14

In contrast, we find that J.W.-S. has bonded with Ms. H██████ and that her best interests are best served in her home. Ms. H██████ is the only parental figure J.W.-S. has known. Ms. H██████ has provided J.W.-S. with safety, stability and love.

We will not disrupt the permanency and stability J.W.-S. enjoys based upon the hope that mother can remain drug free and out of prison. To do so would be detrimental to J.W.-S.'s best interests.

Accordingly the decree should be affirmed.

BY THE COURT:

JOHN F. CHERRY, JUDGE

February ___9___, 2017

**Distribution:**

Damian Joseph DeStefano, Esq., 3800 Market Street, Camp Hill, PA 17011-4642
Owen Lambert Hoover, Esq., 3005 Hoffman Street, Harrisburg, PA
Joy Michele Waters, 91 Sylvan Ridge Road, Harrisburg, PA 17113

15